UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., | No. 2:24-CV-00573-DJC-JDP |
| Plaintiff, | |
| v. | ORDER |
| ROB BONTA, Attorney General of the State of California, in his official capacity, and KATIE PHELAN, Special Agent for the California Department of Justice Bureau of Medi-Cal Fraud and Elder Abuse, in her individual capacity, | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint on the basis that Defendant Attorney General Rob Bonta is immune from suit under the Eleventh Amendment, Defendant Special Agent Katie Phelan is entitled to qualified immunity, the state law claims are barred by the California Tort Claims Act, and the claims are unsupported by sufficient factual allegations.  For the reasons discussed below, Defendants' Motion is GRANTED IN PART.

**I.      Background**

Plaintiff, Dr. Firdos S. Sheikh brings this suit against Defendants Special Agent Katie Phelan and Attorney General Rob Bonta for the alleged wrongful prosecution of

Plaintiff. (First Am. Compl. ("FAC") (ECF No. 12) ¶ 2.) Plaintiff is a neurologist who was investigated by the California Department of Justice ("DOJ") for fraudulent Medicare and Medi-Cal billing practices, and later arrested on charges of billing fraud. (*Id.* ¶¶ 1-2.) She was allegedly exonerated of the charges on March 7, 2022 during the course of a preliminary hearing in which the judge found no probable cause for her prosecution. (*Id.* ¶ 22.)

Defendant Phelan allegedly oversaw the investigation and arrest of Plaintiff, which led to Plaintiff's prosecution. (*Id.* ¶¶ 10, 13.) Defendant Phelan provided sworn affidavits in support of both the search warrants and arrest warrant issued against Plaintiff in which she attested that, based on her training and experience, the evidence she collected showed that Plaintiff had fraudulently billed for medical procedures and therapies. (*Id.* ¶¶ 15-16.) Plaintiff alleges that although she had complied with the Medicare guidelines, Defendant Phelan misrepresented the applicable billing guidelines and led the court to believe that a private insurer's stricter guidelines were the same as the Medicare guidelines. (*Id.* ¶ 20.) Plaintiff also alleges that Defendant omitted exonerating evidence. (*Id.* ¶ 19.) The warrants were issued on these allegedly deceptive warrant applications. Defendant Phelan executed two search warrants on Plaintiff's medical office on October 18, 2017 and March 11, 2020, and arrested Plaintiff in her home on March 13, 2019. (*Id.* ¶¶ 11, 14, 25.)

Plaintiff alleges that during these encounters, Defendant Phelan displayed discriminatory animus toward Plaintiff's ethnicity and religion. Plaintiff is of Indian descent and is Muslim. (*Id.* ¶ 1, 12.) During the execution of the October 2017 search warrant, Defendant Phelan picked up Plaintiff's Muslim prayer mat, and Plaintiff cautioned Defendant Phelan that the mat was sacred in her religion. (*Id.* ¶ 12.) Defendant Phelan then allegedly "pulled the prayer mat out of the bag and mocked Dr. Sheikh for having it, saying, 'oh, the Indian lady has a prayer mat,' after which Agent Phelan disrespectfully tossed the prayer mat to the side . . . ." (*Id.*) Defendant also allegedly made a comment about Plaintiff's ethnicity during her arrest, saying that

2

"the 'Indian lady' would not be drinking 'chai' [a traditional Indian drink] in jail." (*Id.* ¶ 14.)

During the course of the preliminary hearing on the charges against Plaintiff, an internal memorandum from the California DOJ, which exonerated Plaintiff for the same practices she was being charged for, was disclosed to Plaintiff for the first time. (*Id.* ¶¶ 19, 22.) This memorandum had been compiled in 2011, six years before Defendant Phelan sought the first search warrant, and yet, Plaintiff alleges, Defendant Phelan failed to disclose the memorandum when seeking the search warrant and the arrest warrant. (*Id.*) After the disclosure of this memorandum, the court ultimately found that there was no probable cause for any of the charges against Plaintiff and dismissed the charges against her on March 7, 2022. (*Id.* ¶¶ 22, 26.)

Plaintiff initially brought eleven causes of actions on the basis of these facts, but has elected to voluntarily dismiss or modify her claims. (Opp'n at 2–3.) Accordingly, Plaintiff now proceeds with claims against Defendant Phelan for fabrication of evidence, judicial deception, and malicious prosecution, under both California law and 42 U.S.C. § 1983, unlawful search and seizure under section 1983, and claims for intentional infliction of emotional distress, negligence, and violation of California government code 815.6. She also asserts the section 1983 claims against Defendant Bonta for the failure to train and supervise Defendant Phelan's conduct, and seeks only injunctive relief against Defendant Bonta.

Defendants brought the instant Motion to Dismiss, (Mot. to Dismiss ("MTD") (ECF No. 14)), arguing that Defendant Bonta is immune from suit under the Eleventh Amendment, that Plaintiff's state law claims are barred based on her failure to timely file notice pursuant to the California Tort Claims Act, that Plaintiff has failed to allege sufficient facts to support her fabrication of evidence, judicial deception, and malicious prosecution claims, and that Defendant Phelan is entitled to qualified immunity for the unlawful search and seizure claim.

////

3

The matter is fully briefed with Plaintiff filing an Opposition (Opp'n (ECF No. 18)), and Defendant filing a Reply (Reply (ECF No. 19)). The Court heard oral argument on August 8, 2024 with Yasin Almadani and Ahmed Ibrahim appearing for Plaintiff and Amie Bears appearing for Defendants. The matter was submitted following the hearing.

## II. Legal Standard for Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

////

////

////

### III. Discussion

#### A. Claims Against Attorney General Bonta

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). "[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). The *Ex Parte Young* doctrine, however, provides a limited exception to Eleventh Amendment immunity: a state official may be sued in federal court in their official capacity for prospective injunctive relief if the official's conduct violates federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

Because the government entity is the real party in interest in an official-capacity action, the plaintiff must show that the government entity's policy or custom was the "moving force" behind the constitutional violation. *Graham*, 473 U.S. at 166, 167 n.14; *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). A government entity cannot be liable merely for employing a person who causes a constitutional injury; rather the entity, through its policies or customs, must have caused the injury. *Hafer*, 502 U.S. at 25. The entity's policy or custom must amount to a deliberate indifference to the plaintiff's constitutional rights. *Miesegaes v. Durnen* 21-55708, 2022 WL 2340439 (9th Cir. June 29, 2022) (citing *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014)). "Failure to train [or supervise] may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely," or the supervision provided was "sufficiently inadequate" to amount to deliberate indifference. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

5

Initially, although Plaintiff now only seeks injunctive relief against Defendant Bonta following the voluntary dismissal of her claims for damages, Plaintiff has not shown standing to seek such relief. Past harms are not sufficient to support a claim for injunctive relief; rather, a plaintiff must show that future harm is imminent. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiff has not alleged any ongoing conduct or likely future conduct which threatens imminent future injury to her to support standing to seek injunctive relief against Defendant Bonta. Accordingly, the claims against Defendant Bonta in his official capacity must be dismissed on this basis.

Moreover, Plaintiff has not alleged a policy or custom of the California DOJ which was the moving force behind the constitutional violation. Plaintiff alleges that "the CA DOJ operated under a policy, formal or informal, whereby employees and agents, such as Agent Phelan, were not properly trained and supervised to protect the public against the knowing mischaracterization and falsification of information and evidence in materially misleading fashion in pursuit of warrants and charges," and "a policy, formal or informal, whereby employees and agents, such as Agent Phelan, were not properly trained and supervised to protect the public against violations of the equal protection clause and the right to pursue an occupation, as well as retaliatory action for a person's exercise of their right to remain silent and the right to counsel." (FAC ¶¶ 74–75.) These allegations are vague and conclusory. Plaintiff does not specify what the alleged policies were or how they amounted to a deliberate indifference to Plaintiff's rights. Also absent are allegations about how the alleged failure to train or supervise caused the alleged constitutional violations.

In addition, as to the failure to supervise claim, the state official being sued must have more than "general supervisory power over the persons responsible for enforcing the challenged [policy] . . . ." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002). In an official capacity suit, the plaintiff must "name the official within the entity who can appropriately respond to injunctive relief." *Hartmann*, 707

6

F.3d at 1127.  Plaintiff has not established Attorney General Bonta's connection with the alleged unconstitutional policy beyond his general supervisory powers.  Plaintiff alleges only that "Agent Phelan was not appropriately supervised by her chain of command leading up to the Attorney General and the DOJ on the issues informing equal protection, malicious prosecution, deception and falsification, and Brady obligations."  (FAC ¶ 24.)  This bare allegation is thus plainly insufficient to support a claim against Defendant Bonta.

Accordingly, all claims against Defendant Bonta are DISMISSED.  Plaintiff is granted leave to amend her claims against Defendant Bonta.

### B. California Tort Claims Act

The California Tort Claims Act "requires that, before filing suit, an individual seeking to recover in tort against a public entity for claims relating to death or injury to a person must present the claim to the entity 'not later than six months after the accrual of the cause of action.'"  *Butler v. Los Angeles County*, 617 F. Supp. 2d 994 (C.D. Cal. 2009).  Under section 911.2, a claim is considered submitted for purposes of the act when it is submitted with a $25 filing fee or when a fee waiver request is submitted, provided the request is granted or the fee is paid within ten days of the denial of the fee waiver request.  Compliance with the requirements of the Act is "an essential element of the [state law] cause of action."  *D.K. ex rel. G.M. v. Solano Cnty. Off. of Educ.*, 667 F. Supp. 2d 1184, 1195 (E.D. Cal. 2009) (citing *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1243-44 (2004).  Plaintiff alleges in the FAC that she "filed an administrative government claim satisfying all statutory and agency requirements under the California Tort Claims Act" on March 28, 2022.  (FAC ¶ 28.)

Defendants have challenged Plaintiff's compliance with the fee requirement based on evidence the Court cannot consider at this time.  In her declaration, Staff Services Analyst Angelica Ramos declares that the Government Claims Department did not receive the filing fee with Plaintiff's claim despite a letter stating that such a fee was enclosed.  (Ramos Decl. (ECF No. 10-2) ¶¶ 5–8.)  The Court cannot consider this

outside evidence when ruling on 12(b)(6) motion to dismiss without converting the motion to a Rule 56 motion for summary judgement. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The declaration is not judicially noticeable as Defendant claims. Judicially noticeable documents are ones which are either incorporated by reference in the plaintiff's complaint, *see Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006), or are "not subject to reasonable dispute" under Federal Rule of Evidence 201(b)(1)–(2). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Here, the facts asserted in the declaration are in direct dispute. If Defendants believe they have evidence that disproves Plaintiff's allegations, they may bring that evidence forward in a motion for summary judgement; otherwise, the Court at this stage must accept as true Plaintiff's allegation that she complied with the requirements of submitting a claim.

If Plaintiff can prove that she properly filed the notice on March 28, 2022, her filing will have been timely. The Act requires that a claim be filed within six months of "the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented." *Butler v. Los Angeles Cnty.*, 617 F. Supp. 2d 994, 1002 (C.D. Cal. 2008) (citing Cal. Gov't Code § 901). Despite Plaintiff's argument, her claims were not tolled for purposes of filing the Tort Claims Act notice under California Government Code section 945.3 during the pendency of the prosecution against her. Section 945.3 generally provides that an accused cannot bring charges against a peace officer or public entity employing a peace officer while the charges are pending. Although that section tolls the time to bring a cause of action in court, it expressly states that, "this section shall not extend the time within which a claim is required to be presented pursuant to Section 911.2." Cal. Gov. Code § 945.3; *accord Butler*, 617 F. Supp. 2d. at 1002. That said, Plaintiff's notice was timely because the claims accrued well within the six-months of the March 28, 2022 filing date. The Court discusses each claim in turn.

### *State Law Malicious Prosecution*

Count one, which alleges malicious prosecution, would not have accrued until the charges against her were dismissed on March 7, 2022. Under California law, "the principle is well established that the cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously." *Babb v. Superior Ct.*, 3 Cal. 3d 841, 846 (1971). Here there is no dispute that the litigation ended in favor of Plaintiff when the charges against her were dismissed. Therefore, the malicious prosecution claim accrued on March 7, 2022. Plaintiff's notice was filed seven days later, well within the six-month time limit.

### *California Government Code Section 815.6*

California Government code 815.6 imposes liability on a public entity for the entity's failure to discharge a mandatory duty. Plaintiff alleges that Defendant Phelan failed her mandatory duty under California Penal Code section 118.1 to not make materially false and deceptive reports, and failed her Constitutional duties to not maliciously prosecute or fabricate evidence.

When assessing the accrual of a constitutional violation, the court "look[s] to the common law tort most analogous to [the plaintiff]'s claim." *Bradford v. Scherschligt*, 803 F.3d 382, 387–88 (9th Cir. 2015). As stated above, a state-law malicious prosecution claim does not accrue until the litigation is resolved in favor of the plaintiff. *See Babb*, 3 Cal. 3d at 846. A fabrication of evidence claim is similar to a malicious prosecution claim because the conduct violates a plaintiff's right to be free from false criminal charges, and similarly accrues when the charges based on the fabricated evidence are fully and finally resolved. *Bradford*, 803 F.3d at 388–89. Accordingly, the portion of this claim premised on the alleged constitutional violations did not accrue until March 7, 2022.

The portion of the claim based on Phelan's alleged violation of section 118.1 accrued when Plaintiff was put on notice of the false and deceptive report. In general, a claim accrues "'when [it] is complete with all of its elements' – those elements being

9

wrongdoing, harm, and causation." *Pooshs v. Philip Morris USA*, Inc., 51 Cal. 4th 788, 797 (2011) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). However, the accrual will be postponed until "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (the "discovery rule"); *accord Pooshs*, 51 Cal. 4th at 788. Plaintiff alleges that she did not know that the report contained false information until the memorandum was disclosed to her on March 2, 2022, which put her on notice that Defendant Phelan had deceived the court in the warrant applications. Defendants do not argue that Plaintiff had reason to know of the alleged deception beforehand, and thus Plaintiff could not have had reason to know of the cause of action prior to the disclosure.

Because Plaintiff filed the notice well within six months of the accrual of the injury underlying her 815.6 claim, the notice was timely filed.

### *Negligence*

As with the above claim, Plaintiff's negligence claim did not accrue until Plaintiff discovered the allegedly negligent conduct. *Maldonado*, 370 F.3d at 955; *Leaf v. City of San Mateo*, 104 Cal. App. 3d 398, 407 (1980). Plaintiff alleges that she was not aware of Defendant Phelan's negligent failure to include the memorandum until it was disclosed to her. Again, Defendants do not argue that Plaintiff had reason to know of the memorandum beforehand, and thus Plaintiff could not have had reason to know of the negligence prior to the disclosure. Accordingly, Plaintiff's negligence claim did not accrue until March 2, 2022, and the March 28, 2022 notice is therefore timely.

### *Intentional Infliction of Emotional Distress*

"A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Cantu v. Resol. Tr. Corp.*, 4 Cal. App. 4th 857, 889 (1992). Where there is a series of related acts which cause the injury, such that the conduct is continuous, the cause of action

////

does not accrue until "the date of the last injury or when the tortuous acts cease." *Pugliese v. Superior Ct.*, 146 Cal. App. 4th 1444, 1452 (2007).

In *Rodriguez v. Los Angeles Police Department*, the court found that an IIED claim based on a false accusation by a detective did not accrue until the detective testified at trial about the false charges. No. 2:16-CV-02048-RGK-JPR, 2017 WL 3457115, at *3 (C.D. Cal. Apr. 24, 2017). The court found that the initial false accusations and the false testimony at trial formed a series of related acts, such that the intentional conduct which gave rise to the harm continued through to the false testimony. *Id.* The court rejected the defendant's argument that the claim accrued when plaintiff suffered the initial injury of being arrested on the false accusations. *Id.*

Similarly, here, Plaintiff alleges that Defendant Phelan engaged in a continuous course of conduct which gave rise to Plaintiff's emotional injury. Plaintiff alleges that Defendant Phelan obtained warrants based on misleading and omitted evidence, searched and seized Plaintiff's property, arrested Plaintiff using the wrongly issued warrants, and caused charges to be brought against Plaintiff. These actions are all part of a related series of steps toward prosecuting Plaintiff for allegedly false charges, which collectively caused Plaintiff emotional harm. The last injury to Plaintiff resulting from Defendant Phelan's tortuous conduct was the wrongful prosecution against Plaintiff, which ended on March 7, 2022 when the case against her was dismissed. Therefore, Plaintiff's claim did not accrue until March 7, 2022 under the continuing wrong exception, and her March 28, 2022 filing was timely.

\* \* \* \*

In sum if Plaintiff can prove that she complied with the California Tort Claims Act filing requirements, her March 28, 2022 was timely for each of her remaining state law claims.

**C. Sufficiency of Claims**

Defendants next argue that Plaintiff has failed to allege sufficient facts to support her federal civil rights claims for malicious prosecution, fabrication of

11

evidence, and judicial deception against Defendant Phelan.  The Court will assess each in turn below.

### i. Fabrication of Evidence

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc).  "To prevail on a [section] 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  "Fundamentally, the plaintiff must first point to evidence he contends the government deliberately fabricated." *Bradford*, 803 F.3d at 386.  It is only after establishing what the alleged false evidence is that the court then looks to evidence of the defendant's intent. *Id.* (citing *Devereaux*, 263 F.3d at 1076).  The test described in *Devereaux*, i.e. whether the defendant continued the investigation despite knowing the plaintiff's innocence or used coercive investigative techniques, "are not themselves independent causes of action.  Rather, they are methods of proving one element – intent – of a claim that the government deliberately fabricated the evidence at issue." *Id.*

Here, Plaintiff alleges that Defendant Phelan built a case against Plaintiff based on "misleading information and half-truths," including omitted exonerating evidence, but fails to point to any *fabricated* evidence.  Plaintiff does not allege that Defendant Phelan fabricated any of the billing history included in her report, only that Defendant Phelan misrepresented that the billing was fraudulent.  Similarly, Defendant Phelan's alleged failure to disclose exonerating evidence, and her misleading statements about the applicable guidelines, are not fabrications of evidence.  While materially mischaracterizing witness testimony, for example, can constitute false evidence, *see Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010), a misleading statement, without more, is not *fabricated* evidence.  Because there is no

allegation that Phelan created false evidence, Plaintiff has not established this claim.

At the hearing, Plaintiff argued that continuing to investigate the Plaintiff's conduct despite knowing that Plaintiff was innocent could form the basis for Plaintiff's fabrication claim under *Devereaux*. However, as stated above, the Ninth Circuit has clarified in *Bradford* that continuing to investigate an innocent individual does not replace the necessary element that the defendant must have fabricated evidence.

Accordingly, Plaintiff's Second Claim for Relief is DISMISSED with leave to amend.

### ii. Judicial Deception

To state a claim for judicial deception, the plaintiff must show that the defendant made deliberately false statements or omitted facts that were material to the finding of probable cause. *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011); *Blight v. City of Manteca*, 944 F.3d 1061, 1069 (9th Cir. 2019). The materiality element requires the plaintiff to demonstrate that there would not have been probable cause with the false information redacted, or the omitted information included. *Smith*, 640 F.3d at 937; *see Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995).

Plaintiff alleges that Defendant Phelan both omitted material information and made misleading statements, and that, but for the alleged deception, the affidavit would not have supported probable cause. First, Defendant Phelan allegedly failed to include an internal memorandum in which the California DOJ had previously reviewed Plaintiff's practices and found no evidence of guilt. This allegation alone is sufficient to form the basis of Plaintiff's judicial deception claim. If the magistrate judge had been aware that the California DOJ had previously investigated the same conduct and exonerated Plaintiff, it is at least plausible that the magistrate judge would not have found probable cause to pursue criminal charges for the conduct. In fact, once this memorandum was disclosed in the course of the preliminary hearing, the claims against Plaintiff were dismissed for lack of probable cause. Plaintiff further alleges that Defendant Phelan misled the court to believe that Plaintiff's practices were not

consistent with the Medicare guidelines by misrepresenting that the Medicare guidelines were materially similar to the stricter guidelines of a private insurer. If the magistrate judge had been properly informed of the applicable guidelines, which Plaintiff had allegedly complied with, then the magistrate judge also would not have been able to find probable cause for failure to comply with the guidelines.

At oral argument, counsel for Defendants asserted that the FAC lacks allegations concerning whether Defendant Phelan knew about the memorandum before submitting the declarations. If she did not know about the memorandum prior to submitting the declarations, she couldn't have deliberately omitted that information. To the contrary, however, liberally construed the FAC contains allegations that Defendant Phelan knew or should have known of the 2011 Internal Memorandum before submitting the declarations. (FAC ¶¶ 17–20 (alleging that Defendant Phelan knew or should have known of the Memorandum and alternatively that she buried and failed to disclose the Memorandum).) Moreover, the facts as alleged make this a plausible accusation. First, the memorandum was allegedly completed in 2011, before Defendant Phelan started her investigation of Plaintiff. The memorandum was an internal document produced by the CA DOJ and dealt with Plaintiff and the specific practices which Defendant Phelan claimed were illegal. Accordingly, the Court can reasonably infer Plaintiff's allegation that Defendant Phelan would have known about and had access to this document in the course of her duties prior to investigating Plaintiff and prior to submitting the declarations to the court.

Accordingly, Plaintiff has plausibly alleged that Defendant Phelan's omission and misrepresentation were both deliberate and material to the magistrate judge's finding of probable cause, and has therefore alleged a claim of judicial deception.

### iii. Malicious Prosecution

A plaintiff may bring a malicious prosecution claim under section 1983 "not only against prosecutors but also against others – including police officers and investigators – who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d

931, 938 (9th Cir. 2011).  To do so, a plaintiff must allege the defendant prosecuted her (1) with malice, (2) without probable cause, (3) for the purpose of denying her equal protection or another specific constitutional right, and (4) that the criminal proceedings have terminated in favor of the accused.  *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc).

Lack of probable cause and malice are the crux of a malicious prosecution claim.  Probable cause is "an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009).  The probable cause inquiry is objective and is satisfied "when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).  In "California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie – but not conclusive – evidence of probable cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (collecting cases).  A plaintiff "can rebut a prima facie finding of probable cause [] by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.*

Here, because the charges against Plaintiff were dismissed following the preliminary hearing, there is no prima facie evidence of probable cause.  Further, as stated above, Plaintiff has plead that the prosecution was induced by judicial deception.  Specifically, the FAC alleges that if Defendant Phelan had produced the exculpatory memorandum and had not misrepresented the applicable guidelines, there would have been no showing of probable cause to prosecute Plaintiff.

Malice, on the other hand, is shown through evidence of the defendant's subjective mental state.  *Est. of Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008).  Malice is usually a question of fact for the jury.  *Id.* at 1030.  To show

malice, a plaintiff must prove a defendant prosecuted her "without believing her to be guilty, primarily because of hostility or ill will toward her, or for the purpose of obtaining a private advantage against her." *Thuillard v. United States*, No. CV-04-0368-FVS, 2008 WL 4449959, at *7 (E.D. Wash. Sept. 29, 2008).

Plaintiff has sufficiently plead evidence of malice on the part of Defendant Phelan.  Plaintiff alleges that Defendant Phelan made remarks evincing racial or religious animus toward Plaintiff.  Plaintiff is of Indian descent, and she is also a practicing Muslim.  During the execution of the search warrant, Defendant Phelan picked up Plaintiff's Muslim prayer mat, and Plaintiff cautioned Defendant Phelan that the mat was sacred in her religion.  Defendant Phelan then allegedly "pulled the prayer mat out of the bag and mocked Dr. Sheikh for having it, saying, 'oh, the Indian lady has a prayer mat,' after which Agent Phelan disrespectfully tossed the prayer mat to the side . . . ." (FAC ¶ 12.)  Plaintiff understood this to be a showing of contempt toward her religion and ethnicity.  Later, when Plaintiff was arrested by Defendant Phelan, Phelan again made a comment about Plaintiff's ethnicity.  Plaintiff had been drinking chai tea, a traditional Indian drink, and Phelan stated that "the 'Indian lady' would not be drinking 'chai' in jail." (FAC ¶ 14.)  As discussed above, there are also sufficient allegations that Defendant Phelan knew of Plaintiff's innocence via the exonerating memorandum.  From these comments, and the evidence that Defendant Phelan ignored the exonerating memorandum, a jury could find that Defendant Phelan acted with discriminatory animus toward Plaintiff when choosing to prosecute Plaintiff without believing her to be guilty.

Accordingly, Plaintiff has plead facts to make her malicious prosecution claim against Defendant Phelan plausible.

### D. Qualified Immunity

Finally, Defendants argue that Defendant Phelan is entitled to qualified immunity as to the unlawful search and seizure claim because the searches and seizure were conducted pursuant to a warrant.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotation omitted).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  Although "the fact that a neutral magistrate has issued a warrant" ordinarily indicates that an officer acted in an objectively reasonable manner, "that fact does not end the inquiry into objective reasonableness.  The Court has recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"  *Messerschmidt v. Millender*, 565 U.S. 535, 546–47 (2012).

In this case, the fact that a magistrate issued warrants does not resolve the question of qualified immunity.  As discussed above, Plaintiff has sufficiently alleged that the searches and seizure were objectively unreasonable because Defendant Phelan's request for the warrants omitted or misrepresented material information.  Defendant Phelan, as the officer who allegedly carried out the judicial deception, knew or should have known that there was not probable cause for the warrants to issue absent the deception.  Defendant Phelan therefore cannot rely on the issuance of the defective warrants as a shield.  Accordingly, the court finds that Defendant Phelan is not entitled to qualified immunity in this respect.[1]

**IV.    Conclusion**

In accordance with the above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART as follows:

---

[1] The court notes that Defendants have not made an argument that Defendant Phelan is entitled is entitled to qualified immunity for some other reason, such as because the law Defendant Phelan allegedly violated was not "clearly established."  The Court makes this ruling without prejudice to further argument on this issue.

1. All claims against Defendant Bonta are DISMISSED;
2. Plaintiff's Second Claim for Relief for fabrication of evidence is DISMISSED; and
3. Defendant's Motion is DENIED as to all other claims.

Plaintiff is granted leave to amend on all dismissed claims.  Any amended complaint must be filed within 30 days of the issuance of this Order.

IT IS SO ORDERED.

Dated:  **August 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Sheik24cv00573.mtd